WASHINGTON v. TRAFFIC MARKINGS, INC.

[182 N.C. App. 691 (2007)]

━━━━━━━━

DAVID WASHINGTON, JR., EMPLOYEE, PLAINTIFF v. TRAFFIC MARKINGS, INC., EMPLOYER, LIBERTY MUTUAL INSURANCE CO., CARRIER, DEFENDANTS

No. COA06-1086

(Filed 17 April 2007)

**Workers' Compensation— jurisdiction—South Carolina accident—multi-state employer**

The Industrial Commission had jurisdiction over a workers' compensation claim arising from an accident in South Carolina while plaintiff was working for a company which performs work on much of the East Coast. Plaintiff's contract of employment

was created in North Carolina, one of the three provisions for jurisdiction in N.C.G.S. § 97-36.

Appeal by defendants from opinion and award entered 11 April 2006 by Commissioner Thomas J. Bolch for the North Carolina Industrial Commission. Heard in the Court of Appeals 21 March 2007.

*Susan B. Kilzer, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Roy G. Pettigrew, for defendants-appellants.*

TYSON, Judge.

Traffic Markings, Inc. ("Traffic Markings") and Liberty Mutual Insurance Co. (collectively, "defendants") appeal from the Full Commission's ("the Commission") opinion and award that concluded the Commission has jurisdiction over David Washington, Jr.'s ("plaintiff") workers' compensation claim. We affirm.

## I. Background

On 26 June 2003, plaintiff suffered a work-related injury to his lower back while lifting a fifty-pound bag of reflective beads in Conway, South Carolina. Plaintiff was employed by Traffic Markings for "a couple of weeks" when he suffered this injury.

Plaintiff received benefits under the South Carolina Workers' Compensation Act. On 7 January 2004, after denial of certain medical treatment by the South Carolina workers' compensation insurance carrier, plaintiff filed a workers' compensation claim in North Carolina. Defendants denied plaintiff's claim on jurisdictional grounds.

A hearing was held before a deputy commissioner on 10 January 2005. The sole issue was whether the Commission possessed jurisdiction over plaintiff's workers' compensation claim.

## A. Plaintiff's Testimony

Plaintiff lives in Durham, North Carolina and learned about a job opening with Traffic Markings through an advertisement in the *Durham Herald Sun* newspaper. Plaintiff called the telephone number listed in the advertisement and was instructed to come to Raleigh, North Carolina to complete a job application.

WASHINGTON v. TRAFFIC MARKINGS, INC.

[182 N.C. App. 691 (2007)]

On 17 March 2003, plaintiff met with Richard Ridley ("Ridley") in Raleigh. Ridley gave plaintiff a job application, which plaintiff filled out and returned to Ridley. Ridley informed plaintiff he needed to submit to and pass a drug test and provide Traffic Markings with his updated North Carolina Department of Motor Vehicles driving record. Ridley also made copies of plaintiff's North Carolina Class A commercial driver's license and his social security card.

On 18 March 2003, plaintiff presented for a drug test at Concentra on Miami Boulevard in Research Triangle Park, North Carolina. Plaintiff returned a drug screening form and an updated driving record to Ridley in Raleigh. Ridley requested, and plaintiff attended, a safety meeting in Morrisville, North Carolina on 21 March 2003.

Approximately twenty people were present at the meeting, including old and new Traffic Markings's employees and a representative from an insurance company. Timothy Langevin ("Langevin"), the head of operations for Traffic Markings, conducted the safety meeting. Plaintiff received a packet of documents, including Traffic Markings's drug-free workplace policy. Plaintiff also ordered a company uniform at the safety meeting and later picked up the uniform at the Traffic Markings office in Raleigh.

Plaintiff's drug screen was performed at Laboratory Corporation of America in Research Triangle Park, North Carolina. The results of the screen were negative. Plaintiff's drug screen showed a report date of 20 March 2003 and print date of 24 March 2003.

Plaintiff's first day of work with Traffic Markings was 30 March 2003. Plaintiff reported to work in Raleigh, North Carolina and was dispatched by Ridley to Roanoke, Virginia. Plaintiff testified he: (1) drove a truck from Raleigh to the Virginia state line; (2) drove back to Raleigh; and (3) drove another truck the entire route to Roanoke. Plaintiff returned back to North Carolina within a few days, due to inclement weather.

Plaintiff stayed at motels while working out of town. Plaintiff stated he occasionally drove back to North Carolina from out-of-state jobs to obtain needed supplies or equipment from a warehouse located in Raleigh. At other times, supplies were shipped directly to the job site.

Plaintiff testified that he: (1) lives in North Carolina; (2) reported to work in North Carolina; (3) was dispatched for work from North Carolina; (4) ended his work in North Carolina; and (5) received his

direct deposit pay stub in North Carolina. Plaintiff also testified the trucks used on the job were returned and kept in North Carolina. The trucks were also maintained and serviced in North Carolina, unless a vehicle required repair at an out-of-state job site.

### B. Defendants' Testimony

Langevin testified he works at Traffic Markings's headquarters in Franklin, Massachusetts. Traffic Markings is a pavement marking company. Langevin oversees the entire company's operations as its operations manager. Langevin testified Traffic Markings performs work in the Northeast and down the east coast from New York to Georgia.

Langevin described Traffic Markings's hiring process. The company searches for employees by placing advertisements in newspapers. Potential employees respond and are requested to complete an application. An interview and a drug screen is conducted. At the interview, Traffic Markings distributes employee handbooks, information on the company's safety policy and its "hazardous communication program." The company also requests a driving record from the state in which the potential employee resides. The potential employee is also asked to complete a W-4 and I-9. A copy is made of the person's social security card. A nurse practitioner in Massachusetts is contacted to telephone potential employees and discuss the job's demands. This information is collected and sent to Langevin in Massachusetts. Langevin is the final decision maker on which applicants Traffic Markings will offer employment in all states.

Langevin performs the entire hiring process in the Northeast. In southern states, Langevin only performs the paperwork portion of the hiring process and approves potential new employees. Langevin testified Ridley is the person who places advertisements in the newspapers, interviews the potential employees, and actually offers the job to the potential employee once notified by Langevin to do so.

Langevin testified that plaintiff was hired after his application and testing was completed. Langevin did not remember the exact date plaintiff's paperwork was completed. Langevin informed Ridley, "I have all [plaintiff's] stuff in and set him up to work." Langevin testified Ridley would have telephoned plaintiff and said, "Come to work." When asked if plaintiff would have accepted the job in North Carolina, Langevin responded, "He would have accepted, yes."

**WASHINGTON v. TRAFFIC MARKINGS, INC.**

[182 N.C. App. 691 (2007)]

Traffic Markings's president, contracts manager, and operations manager are located in Massachusetts. Langevin testified Traffic Markings's entire office staff including accounts payable, accounts receivable, and payroll is located in Massachusetts.

Langevin also testified about Traffic Markings's office in Raleigh, North Carolina at the time plaintiff was hired. Traffic Markings rented a small building with an office and storage area.

Langevin testified, after reviewing the company's time entry reports, plaintiff worked "ninety-five percent of the time" outside of North Carolina.

Ridley testified Langevin makes the ultimate decision to hire a potential employee. Ridley explained he processed some of the initial paperwork for plaintiff's application for employment and sent the information to Langevin in Massachusetts. After Langevin decided to hire plaintiff, Ridley telephoned from Raleigh to plaintiff in Durham and notified him that, "There's a crew heading out of town. Be in the shop at six a.m., and pack a bag." Plaintiff responded and appeared for work that day in Raleigh.

On 24 May 2005, the deputy commissioner entered an opinion and award that concluded the Commission has jurisdiction over plaintiff's claim pursuant to N.C. Gen. Stat. § 97-36. Defendants appealed to the Full Commission. On 11 April 2006, the Full Commission entered an opinion and award that affirmed the deputy commissioner's decision. The Full Commission concluded:

Plaintiff's June 26, 2003, South Carolina accident is compensable under the North Carolina Workers' Compensation Act because: plaintiff's accident would entitle him to compensation if it had happened in North Carolina; the contract of employment between plaintiff and defendant-employer was made within North Carolina; and, at the time of the accident, plaintiff's principle place of employment was within North Carolina. N.C. Gen. Stat. § 97-36.

Defendants appeal.

## II. Issue

Defendants argue the Commission did not possess jurisdiction over plaintiff's workers' compensation claim pursuant to N.C. Gen. Stat. § 97-36.

### III.  Standard of Review

Our Supreme Court has stated:

As a general rule, the Commission's findings of fact are conclusive on appeal if supported by any competent evidence. It is well settled, however, that the Commission's findings of jurisdictional fact are *not* conclusive on appeal, even if supported by competent evidence. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record.

*Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000) (emphasis supplied) (internal citations and quotations omitted); *see Davis v. Great Coastal Express*, 169 N.C. App. 607, 609, 610 S.E.2d 276, 278 ("[T]he Commission's findings of jurisdictional fact are *not* conclusive on appeal, even if supported by competent evidence.") (internal quotation omitted), *disc. rev. denied*, 359 N.C. 630, 616 S.E.2d 231 (2005).

### IV.  N.C. Gen. Stat. § 97-36

N.C. Gen. Stat. § 97-36 (2005) contains the factors to determine if an employee, who is injured in an accident outside of North Carolina, is entitled to compensation. N.C. Gen. Stat. § 97-36 provides:

Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him . . . to compensation if it had happened in this State, then the employee . . . shall be entitled to compensation (i) if the contract of employment was made in this State, (ii) if the employer's principal place of business is in this State, *or* (iii) if the employee's principal place of employment is within this State[.]

(Emphasis supplied).

"Because plaintiff's accident occurred in South Carolina, North Carolina has jurisdiction over plaintiff's workers' compensation claim *only if* one of the three provisions in N.C.G.S. § 97-36 applies." *Davis*, 169 N.C. App. at 608, 610 S.E.2d at 278 (emphasis supplied).

In order for the Commission to assert jurisdiction over plaintiff's claim, the jurisdictional facts must show either: (1) plaintiff's "contract for employment was made in this State;" (2) defendants' "principal place of business is in this State;" or (3) plaintiff's "principal place of employment [was] within this State." N.C. Gen. Stat. § 97-36.

Neither party asserts defendants' principal place of business is located in North Carolina. Plaintiff must prove either: (1) his contract for employment was made in North Carolina or (2) his principal place of employment was within North Carolina. *Id.*

### A. Plaintiff's Contract for Employment

Defendants argue the last act that created an employment relationship between plaintiff and Traffic Markings occurred in Massachusetts and assert plaintiff's contract for employment was not made in North Carolina. We disagree.

"To determine where a contract for employment was made, the Commission and the courts of this state apply the 'last act' test." *Murray v. Ahlstrom Indus. Holdings, Inc.*, 131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998) (citing *Goldman v. Parkland*, 277 N.C. 223, 176 S.E.2d 784 (1970); *Thomas v. Overland Express, Inc.*, 101 N.C. App. 90, 96, 398 S.E.2d 921, 926 (1990), *disc. rev. denied*, 328 N.C. 576, 403 S.E.2d 522 (1991)). "[F]or a contract to be made in North Carolina, the final act necessary to make it a binding obligation must be done here." *Thomas*, 101 N.C. App. at 96, 398 S.E.2d at 926 (citing *Goldman*, 277 N.C. 223, 176 S.E.2d 784).

Our Supreme Court has stated:

> In the formation of a contract an offer and an acceptance are essential elements; they constitute the agreement of the parties. The offer must be communicated, must be complete, and must be accepted in its exact terms. Mutuality of agreement is indispensable; the parties must assent to the same thing in the same sense, *idem re et sensu*, and their minds must meet as to all the terms.

*Dodds v. Trust Co.*, 205 N.C. 153, 156, 170 S.E. 652, 653 (1933) (internal citations omitted).

Undisputed testimony in the record shows: (1) Langevin made the final decision to hire plaintiff in Massachusetts; (2) Langevin telephoned Ridley in North Carolina and informed him, "I have all [plaintiff's] stuff in and set him up to work[];" (3) Ridley telephoned plaintiff at home in North Carolina and stated, "There's a crew heading out of town. Be in the shop at six a.m., and pack a bag[];" and (4) on 30 March 2003, plaintiff reported to work in Raleigh, North Carolina and was dispatched to Roanoke, Virginia by Ridley. Traffic Markings offered plaintiff a job when Ridley in Raleigh, North Carolina tele-

phoned him in Durham, North Carolina. Plaintiff accepted the job on 30 March 2003 when he reported for work in Raleigh, North Carolina. Plaintiff's contract for employment was completed in North Carolina upon this offer and acceptance. *Murray*, 131 N.C. App. at 296-97, 506 S.E.2d at 726-27 (plaintiff's contract for employment was completed in North Carolina when his former out-of-state employer telephoned him at his home in Canton, North Carolina and offered plaintiff a job in Mississippi and plaintiff immediately accepted); *see Dodds*, 205 N.C. at 156, 170 S.E. at 653 ("In the formation of a contract an offer and an acceptance are essential elements[.]").

Plaintiff's acceptance of employment in North Carolina was the "last act" that created his contract for employment with Traffic Markings. N.C. Gen. Stat. § 97-36 confers the Commission's jurisdiction over plaintiff's claim.

### V. Conclusion

"Because plaintiff's accident occurred in South Carolina, North Carolina has jurisdiction over plaintiff's workers' compensation claim *only if* one of the three provisions in N.C.G.S. § 97-36 applies." *Davis*, 169 N.C. App. at 608, 610 S.E.2d at 278 (emphasis supplied). We hold plaintiff's contract for employment was created in North Carolina. The Commission's opinion and award is affirmed.

Affirmed.

Judges HUNTER and JACKSON concur.